IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| RON B. & JOLEEN E. SCHREINER, | ) | CASE NO. BK08-41014-TLS |
| | ) | |
| Debtor(s). | ) | CH. 12 |

ORDER

Hearing was held in Lincoln, Nebraska, on February 4, 2009, on the debtors' first amended Chapter 12 plan (Fil. #62) and objections to confirmation filed by Platte Valley Bank (Fil. #64) and Rabo AgServices, Inc. (Fil. #68). James R. Nisley appeared for the debtor, Philip M. Kelly appeared for Platte Valley Bank, and Tim W. Thompson appeared for Rabo AgServices, Inc. The parties have supplemented their oral arguments with post-hearing briefs and the matter is now ready for decision.

Confirmation of this plan is denied.

The debtors filed their first amended Chapter 12 plan on December 30, 2008. In it, they propose to pay the secured claim of Platte Valley Bank with annual payments over a period of 20 years. The claim is $92,687.37 of principal plus interest from the petition date. Interest on the amortized amount is to be paid at the formula rate set forth in Nebraska Rule of Bankruptcy Procedure 3023-1.B,[1] which, at the time of the confirmation hearing, was approximately 5.25 percent. The claim arises from a three-year promissory note signed by the debtors in February 2008 and secured by real estate. The interest rate on the note is 7.2%. The claim was secured by a 2003 deed of trust on 80 acres, although the bank inadvertently released that deed of trust in April 2008. The parties stipulated in October 2008 that the bank's lien on the real estate would continue and the bank could file corrected paperwork in the land records. *See* Fils. #49 (motion to approve stipulation) and #53 (order granting). However, the debtors have not yet executed the necessary documents. The value of the property appears to be approximately equal to the amount of the bank's claim.

---

[1]That portion of the rule provides:
**B. Formula**. Whenever the Court is required to determine the value, as of the effective date of a plan, of property to be distributed under a plan for any confirmation purposes, there is a presumption that the appropriate interest rate shall equal the national average of the prime rate as published in The Wall Street Journal on the last business day prior to the confirmation hearing, stated as a simple interest rate per annum, plus two percentage points. If the creditor desires a different interest rate, it must specifically object to confirmation based upon inadequacy of the interest rate and shall have the burden of proof by a preponderance of the evidence on the appropriate rate of interest, which issue shall be considered at the confirmation hearing. . . .

The plan also proposes to pay Rabo AgServices' secured claim of $83,000 in principal plus interest from the petition date over the course of 20 years, with interest calculated at the formula rate. The claim is secured by real estate, machinery, equipment, livestock, and supplies with a total value that Rabo estimates at $202,070, so Rabo is over-secured. The claim is based on a 2001 promissory note that contained an interest rate 2.5 points above the prime rate and was due and payable about 13 months after it was signed. It was essentially a one-year operating loan secured by machinery, equipment, and farm products. The debtors defaulted, and they and Rabo executed a forbearance agreement in 2004 by which Rabo reamortized the debt over 10 years, with a balloon payment due in five years and an interest rate three points above prime and a minimum interest rate of 10 percent. As part of the deal, the debtors gave Rabo a deed of trust on 80 acres of real property.

Both lenders object to the plan. The bank argues that a 20-year repayment with a low fixed rate of interest is not what it bargained for when it made the loan. It is willing to accept a 20-year amortization with a balloon payment after five years, which would allow the parties to renew the loan for an additional five-year term and adjust the interest rate to the current market rate. Likewise, Rabo objects to both the duration of the plan and the interest rate. It argues that the current economic climate requires a risk adjustment to the prime rate of more than two percentage points. Rabo points out that the prime lending rate in late January 2009 was half of what it was one year prior, due in part to efforts by the Federal Reserve to encourage lending and prevent further deterioration of the financial markets. Rabo objects to what it describes as the debtors' attempt "to parlay the deflated prime rate of interest in the near term to a long term lending relationship with Rabo." Mem. in Support of Rabo's Obj. to Debtors' Amd. Plan (Fil. #77) at 6. It suggests the debtors should be directed to pay a "prime plus four" interest rate.

Generally, a plan must propose to pay claims in no more than five years, 11 U.S.C. § 1222(c), but secured claims may be paid over longer terms if certain requirements are met. Section 1225(a)(5) sets forth those requirements:

> [W]ith respect to each allowed secured claim provided for by the plan —
> (A) the holder of such claim has accepted the plan;
> (B) (i) the plan provides that the holder of such claim retain the lien securing such claim; and
> (ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim; or
> (C) the debtor surrenders the property securing such claim to such holder[.]

Because the objecting creditors have not accepted the plan and the debtors are not proposing to surrender the collateral, the issue is whether the plan's proposed treatment of the claims provides for payment of the claims' present values. That entails an evaluation of the appropriate discount factor to be applied to the stream of payments, as well as an assessment of the repayment period. The Supreme Court case of *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004), adopted the formula approach that is set forth in Local Rule 3023-1. Factors for a court to consider when deciding whether the formula rate is sufficient include the estate's circumstances, the nature of the security, and the duration and feasibility of the plan. *Till*, 541 U.S. at 479.

While neither creditor in the present case is excited about the current global financial situation and the resulting low prime rate, the formula interest rate as proposed by the debtors is appropriate under *Till*. The present "suffocating economic uncertainty" described by Rabo is not under the debtors' control and they should not be made to alleviate any more of Rabo's risk than *Till* requires. Generally, interest rates are cyclical, sometimes to the borrower's advantage and sometimes to the lender's advantage. Currently, the rates are in the debtors' favor. That simply is how it is. However, as an over-secured creditor, Rabo is entitled to its contract rate of interest through the date of confirmation, *In re Elk Creek Salers, Ltd.*, 286 B.R. 387, 394 (Bankr. W.D. Mo. 2002), and the *Till* rate thereafter.

In addition to the interest rate, the creditors question the duration and feasibility of the plan, and those concerns are well taken.

When contemplating a plan's repayment period, the court may consider the length of the underlying note and the creditor's customary repayment periods for similar loans. *In re Torelli*, 338 B.R. 390, 397 (Bankr. E.D. Ark. 2006). The *Torelli* case is the only reported case from within the Eighth Circuit that addresses *Till* in the Chapter 12 context, so it provides substantive guidance on the precise issues raised by the parties in this case. The debtor in *Torelli* proposed repayment of a five-year, 7.75 percent note over 20 years at 5 percent. As that interest rate was lower than the minimum required by *Till*, the court adjusted it. The court also ruled that the 20-year term did not withstand scrutiny in light of § 1225(a)(5). Specifically, the court said the lender would not receive "the benefit of its bargain by being forced into a new loan of substantially longer term than originally contemplated by the parties." *Torelli*, 338 B.R. at 397. That is the same argument Rabo and Platte Valley make in this case. The *Torelli* court refused to approve such a lengthy term and said that a 10-year amortization with a five-year balloon payment was more appropriate. If the debtor insisted on the 20-year term, the court said it would impose a significantly higher interest rate to protect the lender.

Both loans in the present case were short-term loans. Neither lender anticipated a 20-year repayment schedule when it signed the notes, and they should not be compelled to accept such terms. The bank is willing to accept a 20-year amortization with a balloon payment in five years, with the loan renewable for an additional five years at the current commercial/agriculture loan rate. Rabo wants a three-year term, or a 10-year amortization with a balloon payment in three years. A shorter amortization with a balloon payment is appropriate under the circumstances.

The plan should also provide for keeping the real estate taxes current to avoid eroding the value of the secured creditors' interests. In addition, as an over-secured creditor, Rabo is entitled to attorney fees from the date of filing through the date of confirmation, pursuant to § 506(b). *In re Lichty*, 251 B.R. 76, 78 (Bankr. D. Neb. 2000). Finally, the objections to confirmation by Scotts Bluff County Treasurer (#63) and the Chapter 12 Trustee (#67) were sustained at the hearing so any amended plan filed by the Debtor shall provide the appropriate language and terms as set forth in the objections.

If, after a newly amended plan is filed, a creditor or party in interest has serious reservations about the debtors' ability to make the plan payments, it may request a trial of the issue of feasibility.

IT IS ORDERED: The objections to confirmation filed by Platte Valley Bank (Fil. #64) and Rabo AgServices, Inc. (Fil. #68) are sustained. The debtors shall file a second amended Chapter 12 plan by May 1, 2009.

DATED:    March 30, 2009.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
*James R. Nisley
Philip M. Kelly
Tim W. Thompson
United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.